As you know, the issues in this case overlap somewhat substantially with those in the Thomas case that was just argued. So, I would hope to touch on all three of the primary analytical questions in this case, which I would describe, I guess, as the McDaniel issue, kind of the framework or Keene issue, and then the purpose element issue. I would start, Judge Richardson, with your question about McDaniel. I think the reason that we view it as not controlling in this case is sort of twofold. The first is that in the opinion itself, Judge King is very careful to cabin the analysis to Section 111. In particular, the opinion distinguishes the cases under 113 that were decided in, I think, there were four circuits, Ashley, Loera, Zuni, and I forget the name of the fourth case, all of which have held that under 113, recklessness is the default mens rea for a federal assault. So, in McDaniel, again, those were cabined. And the court said, look, we're dealing solely with 111. The reason that recklessness is not the default under 111 is because the Supreme Court has specifically addressed 111 in Fiola. That's a 1975 decision that came before all of the cases that have interpreted 113. That's a statute that has a long history. If you look at Fiola, I think it goes back to the founding. So, it's a very specific statutory context. So, we think, for one... But 1959 comes not long after Fiola, right? I mean, you know, I get there's a little bit of a fiction here that Congress is paying attention to the court, but we do engage in that fiction, right? I agree with that, and I think that's sort of the second reason why we think that the outcome here is different, and that is looking at what Congress did in 113 compared to what Congress did in Bicar. So, if you look at... 113 or 111? 113. So, I think 113 is a critical statute for understanding what Congress means when it says assault with a dangerous weapon. Because if you look at 113, this is the general assault... It also... I just want to make sure I'm following. Because it also requires a specific intent, right? Assault with a dangerous weapon with the intent to commit serious injury or whatever it might be. Judge Richardson, that's my key point. When Congress used the phrase assault with a dangerous weapon, it did not believe that that phrase standing alone required a specific intent. We know that because they in A3 specifically added with intent to do bodily harm. If the phrase assault with a dangerous weapon by itself required more than recklessness, required that specific intent, then adding that additional language with intent to do bodily harm was superfluous. There was no need for it. If, as Judge Wilkinson has posited... When was 113 passed? I don't know that I off the top of my head know the exact date it was passed. You understand why it would matter, right? If it's pre-'75, then it makes more sense. If it's post-'75, then it seems like a different argument. I mean, those are different arguments depending on when that law was passed, right? I think they're different, although I think they end up in the same place, which is that in the federal code, when you have assault without a specifically articulated mens rea requirement, the default is recklessness. And there is a consensus in the circuits on that point. I do not believe the government has pointed to any circuit that has said assault in 113, 4 through 113A8, requires anything more than recklessness. The government has affirmed conviction after conviction on that. Four through eight, but not three. Exactly. And the difference is that what Congress did in A1, A2, and A3 is said, in these specific provisions, we are adding a mens rea requirement that is not inherent in the phrase assault, or in the phrases in A3, assault with a dangerous weapon. And I think the point I would make is that when Congress wrote the Vicar Statute, they copied the language assault resulting in serious injury from A, I believe it's 6, but they did not copy the entirety of the language in A3. They could have said assault with a dangerous weapon with intent to do bodily harm. That would have been incorporating both the actus reus and the mens rea. Congress instead chose in Vicar only to incorporate assault with a dangerous weapon, not to bring over the intent requirement that is specifically articulated. Why wouldn't we say that, why wouldn't we say, given 111 and FIOLA, that it incorporated like 111 and FIOLA instead of this appears to be 1948, 113 statute? I think the difference is that if you look at the phrase that's in Vicar, assault with a dangerous weapon, those five words, they appear in 113. They do not appear in 111. 111 is not an ordinary assault provision. It is assault or resistance or interference with a federal officer in the course of their duties. And then in a separate subsection B, there is the use of a deadly weapon. That's an enhanced penalty, right? That's a separate offense. I mean, that doesn't help, does it? I'm sorry, Judge Wilkinson. I don't know why that makes any difference. It is a separate, the element of that offense is the assault with a deadly weapon. Right, and I believe it, if I maybe make a case, and maybe it's Bryant that has the life in jeopardy provision, but the statutory context is different, the language is different. I think the point I'm making is that the exact statutory phrase that appears in Vicar appears only in 113A3, assault with a dangerous weapon, appears word for word in A3. Congress did not think those five words by themselves carried an intent requirement, otherwise they would have not needed to add the specific intent requirement in A3. And so our argument is that the contrast between the language of 1959 and the language of A3 suggests that Congress knew it needed to add an intent requirement specifically if it wanted to add something above the default recklessness. Are you suggesting that the assaults with a dangerous weapon should be interpreted differently from its assault resulting in serious bodily injury? I believe that both the phrase assault with a dangerous weapon and the phrase assault resulting in serious injury require only recklessness. Require what? Require nothing more than recklessness for a mens rea. But again, all of these, then you would have to say murder, kidnapping, maiming are also subject to reckless or accidental? No, Your Honor, I don't think that follows at all. I think that the enumerated offenses can and do carry different meanings. For example, kidnapping has already been pretty well established by this court. I don't understand why we should separate them because they're all part of the same statute. They're all part of a long list. And more critically, the language purpose of, not just generally, but of gaining entrance to or maintaining or increasing a position applies to all of those verbs. It does. And so let me turn to that point, which is I think somewhat— If it applies to all of those— If the same mens rea applies to all the different verbs listed in 1959A, why should we go about trying to separate them and complicating the whole picture? Once again, this area suffers from too much complication. And say, well, we have this crime, this crime, and this crime, which are going to be treated one way, and then we're going to treat the others the other way. Notwithstanding the fact that they're all part of the— all of the verbs are part of the same context, in the same section, subject to the same purpose requirement, why would we treat any of these differently? And the purpose requirement— I don't understand the recklessness argument with the purpose requirement. It doesn't seem to me that if you act, not just willfully and knowingly, but if you act with a definite purpose in mind, that's not reckless. That's something above. It's a step above reckless. Sure. So let me—I think there are two kind of separate questions embedded in there. One, about how we define each of these separate enumerated offenses. And I'll say one thing about that before turning to purpose. I think that regardless of what you do, each of those— I think it's six or however many it is—enumerated terms in Vicar, you're going to have to define what each one of them means under kind of whoever's approach here. And so that would include potentially Mince Ray requirements. But let me turn specifically to purpose because I know there were a lot of questions about that in the earlier argument as well. And I think the key point— Well, Ms. Pratt said that those parts, the different elements of the statute, simply weren't connected. Well, I don't read it that way. I do think that for the purpose of there's, to me, no way to read the statute other than that it connects to each of the enumerated acts, the murder names. Why do you say act instead of offense? That's fine, too. It might matter. I'm just—you choose your words carefully, and I appreciate that. And that's why when you chose the word act instead of offense, which is assault, that seemed to—that just rung in my ear. I think we get to the same place whether you think of it as either six acts or six offenses. And I think the key reason why the purpose element doesn't change the 924C analysis is that what 924C requires is a targeted use of force. That's what Borden says. It has to be an intentionally targeted use of force. If the use of force that is deployed is reckless, then that doesn't satisfy 924C. Our view is that you can act, you can commit an offense where the purpose of what you've done is a gang-related purpose that satisfies Leicar's purpose element, but you have not intended to direct force at another individual. You're back to the drunk driver or the shooting the firearm in the air. All of those, yeah. I think all of those— So how is that connected to the purpose? The purpose, you're paid or you intend to do this act to up your standing within the RICO enterprise. And you're to murder this person or you're to assault with a deadly weapon this person. So if in the course of doing that, you shoot the gun up in the air and it hits somebody else, that's not a Leicar crime. So I think the difference is that the examples you're positing are ones where the result is the intended result. And that is what is different. Right. You're paid to murder this person. That's the Leicar crime. Right. But if there's some other ancillary act that goes in there, that's not a Leicar crime. So I don't see how that makes—your argument makes a difference. I think the reason it makes a difference—and let me take a step back and maybe start with a concession, which is that this purpose argument does not matter unless you agree with me that assault with a dangerous weapon can be committed recklessly. If assault with a dangerous weapon requires an intent for the assault to happen, then we lose on that issue, setting aside the framework stuff, which we can come back to. And then you don't need to get to the connection between the purpose and the— You know, one of the things that we are instructed by in the Supreme Court is not to engage in flights of imagination and not to stretch our imagination to think of some conceivable case on the periphery that just might conceivably, speculatively been committed with a recklessness frame of mind. And you've got the opinion in Duenes-Alvarez saying, oh, look at the core of what this is. And the core of what we're looking at is that the assault with a dangerous weapon committed for a particular purpose  Now, then you're saying, well, then maybe there might just conceivably in some kind of never, never land be a conviction for recklessness here. And I don't see this—I think the Supreme Court is just trying to say, no, you know, we're not going to interpret crimes of violence in that way. And they weren't dealing with this precise context because they were dealing with what is the minimum required to convict. But I see ourselves repeatedly asked what theoretically might conceivably happen. And the difference from what is really, as a practical matter, likely to happen. And what's likely to happen is a willful, knowing, intentional assault with a dangerous weapon and with a purpose, a definite, definitive purpose in mind. And that's the core of it all. I understand that. I think with Duane S. Alvarez, what you're referring to specifically is the realistic probability test. And on that, I would just point real quickly, since we've been talking about McDaniel, there is a footnote in McDaniel that makes clear that in light of Taylor, that piece of Duane S. Alvarez does not apply when we are interpreting a federal offense. But if the court would indulge, I would at least like to spend just a minute to see if there are any questions about the framework issue. And Judge Richardson, I think you articulated it well and correctly, and it's the right starting point in your questions. When you think about the relationship between the assault with a dangerous weapon language and the in violation of state or federal law language, as you said, the second modifies the first. And the question that is open for this court is what is the nature of that modification? Keene has rejected one possibility. It's possible, at least before Keene, that it was supposed to be a categorical possibility. That was rejected. That leaves open two ways that we can think about the relationship or the nature of that modification. One is that they are separate, stand-alone offenses. That you have assault with a dangerous weapon under federal law or generic law that has a set of elements that have to be satisfied. And you have to identify a specific additional federal or state law, and it has a set of elements.  The other possibility is that it's a pass-through. It is that it is a general type of offense and that the prosecutor has to identify a state or federal law that meets the falls within that type. It can't be shoplifting, as you suggested, and then has to prove the elements of that offense. What I would submit to the court is that pass-through understanding is how Vicar has been prosecuted for 40 years since it was passed. I have never seen... Passing familiarity with prosecuting Vicar cases. I guess my question for you would be, did you ever ask for jury instructions that articulated the separate elements of assault with a dangerous weapon? It's not separate elements. It is itself an element. The element is, just like in 111 prosecution, it is assault with a deadly weapon. The jury has to be told what that means. What assault with a deadly weapon means. It's not separate elements, though. It's a definition of what that phrase means. In the same way that McDaniel tells us what that phrase means. You would have to give an instruction on what assault with a deadly weapon is. I think that breaks down to what the elements of the offense are. Mens rea would be one. I guess our point here is, and the government has not identified one. I think Mr. Cook pretty candidly admitted nobody has ever really thought about it like this before Keene happened. I'm not aware of jury instructions that have separately articulated federal assault with a dangerous weapon requires a mens rea of intent, and then state requires these elements. Is there any reason why this case should be treated differently from its predecessor to the first case? It seems to me that the arguments that are being made, while perhaps not identical, are very, very similar. I agree with that. I mean, your view is that they rise or fall together, isn't it? I think that's right with the caveat that I'm not familiar with the underlying state predicates. Oh, I know. But you get to the state predicates. Your view is that they should create a great deal of infusion to try to split the two off and that they either rise or fall together. I agree with that, particularly if the court rejects the Alvarado-Linares case from the 11th Circuit Judge mentioned. One thing I would highlight about that before sitting down is that is the one and only decision I'm aware of that is post-Keene and that engaged with the analysis. So, in that case, the parties submitted… They didn't engage very much. They might have had a paragraph. They did not engage in the discussion we're having here today at all. They may have. Well, so fair enough in the opinion. What I would suggest to the court is to take a quick look at the supplemental briefing in that case. The government, again, that was post-Keene. The government submitted supplemental briefing being like, hey, I mean, it's very similar to what the government argued here. Look at Keene. These are separate elements. You shouldn't look at the state stuff at all. And the 11th Circuit engaged with that, said, no, we think the defendant has a better view. Now, I agree they didn't go into great detail as to why. Well, that's pretty much all the detail that they… I acknowledge that, Your Honor. But I will say that is more detail than you see in Manners, which didn't even wave at the issue. It talked directly about A3 and assault with dangerous weapon, but it didn't give any analysis as to why. Well, there is one difference. I should have asked you about this at the very beginning, but you can address it if you would when you get back up for rebuttal time, because I'll ask the government about it. They say this is different from the first case, Thomas, because the government says that we never get to any of these issues, that there are multiple waivers here. The plea agreement and the failure to brief initially, and the district court addressed the 1959 separately as an independent grounds, which you did not address. So we'll see what they say, and then you can tell us what you say. Sure thing. Thank you. Mr. Carpenter, one more point if you would. This whole area is in dire need of some sort of realism and some sort of simplicity. And I noted that, and I realize we're in the categorical approach. We can't look at facts or do anything like that. But have we really arrived at a position where somebody who is engaging in several criminal offenses as a member of an MS-13 gang, including firing a handgun into a crowd at a Charlotte club and shouting with other gang members, We are Maras of the future. We will kill all of you. And he's firing a gun into a crowd at a Charlotte club. It's a mass murder. And here the district court has said, oh, you can't. You can't look at facts. You can't look at facts. And so we are, by virtue of the complexity that has been introduced in this area, have arrived at a situation where you are arguing that we are absolutely forbidden to take someone shooting into a crowd in the middle of a nightclub. That that should factor in to the 924C conviction. And I know there are arguments you can give. But I'm telling you that what the disabled district judges from looking at this, the disabled court of appeals judges from looking at this, to try to go into some angels dancing on the head of a pen and Byzantine inquiries, and ending up saying that, no, this is not categorically a crime of violence, and therefore for warrant of a predicate, the 924C conviction was false. And I just wonder where we are in this whole business. I think there are two sort of very practical points just in response to that concern, which is a legitimate one. I think the first practical point is those facts always, always get considered by the district court judge under 3553A. They always do. And so what we're dealing with here, we have a Vicar conviction and a 924C conviction. There's no dispute that the Vicar conviction is valid, that Mr. Castillo will suffer an appropriate punishment as a result of it. The only question is the validity of the 924C. And that brings me to the second practical purpose, which is, and this is where I think I worry that the government's, the Department of Justice's position in this case is somewhat short-sighted, because to salvage a 924C conviction in a 10- or 15-year-old prosecution, the government is increasing the difficulty of prosecuting Vicar cases going forward by saying you have to prove a separate element. It's not a pass-through like it always has been. You have to prove this separate federal element. And it's doing the same thing with the purpose requirement in amping up what it requires. I think it would be short-sighted to make it more difficult for all future prosecutions of Vicar cases just to salvage this. All I can say, Mr. Carpenter, is to borrow from a Robert Frost point. We're at a point where two roads diverge in a wood, and one road is a road to a simple, straightforward application of 924C which recognizes the active rest, which recognizes the broad consensus of courts across the country, which takes advantage of the purpose requirement here. That is the road of simplicity. And there's another road in the wood that you're sketching out for us, and that is a road of compounded complexity where predicates pile upon predicates. And we can sow confusion. But it really is, I think, time for this to end. Well, I certainly understand your perspective, Judge Wilkinson. I do hope your colleagues will be assured. I understand yours, too. And you're a very able advocate, and I always am happy when you're going to argue a case, and I look forward to it. You've got some rebuttal time. I hate to do this, but can you start with his last point? Because I sort of was fascinated by this, too. His argument is that this is like changing the elements of Vicar. And so I guess, one, like help me understand that, and, two, at least when I look at the publicly available DOJ jury instructions and the like, the Vicar manual that they have available from 2006, they charge it this way, or at least they say to charge it this way. And so I guess I'm confused by the argument that this is a change from DOJ. Do you see it that way? I don't see it that way, Your Honor. I don't think we're being short-sighted. And, frankly, I can tell you why I'm advocating for this position is because I'm trying to help this court figure out what the law is, whether that's to our advantage or not. I would recognize that the defense has several examples of what he believes Vicar permits, and there's not one example he's cited in an actual case. Drunk driving? I don't know. I can't say for sure. We've never prosecuted drunk driving as a Vicar offense, but I'd imagine if we had, my friend would have pointed it out. Shooting up into the sky or shooting down the road on a dare or something like that? Those are not Vicar cases. And I think there's a key point to this. McDaniel held, I think McDaniel's dispositive in this case, and it didn't just hold that 111 requires intent. It also held that the common law definition of assault requires something greater than recklessness. And that's dispositive because the common law definition presumptively applies, both because there's a Supreme Court rule to that effect, and because that's the definition this court has always used for assault defense. It's also the definition that my friend asked the court to apply in his initial 2255 motion, and that the district court did apply, and that if I read his brief correctly on page 10, he doesn't dispute. So that definition, willfully attempting to cause harm or a threat to cause an apprehension coupled with the president's ability to do so, is presumptively the definition. And if there were any argument for applying a different definition, or one that requires something with a lower mens rea for some federal assault statutes, it wouldn't be this one, because this one has the dangerous weapon requirement, which we've talked about. It has the purpose requirement, which we've talked about. And it appears in the statute that Congress explicitly designated targets crimes of violence. And there are some states recognize reckless assault. I don't dispute that. Those are on the other line of crimes of violence. That's what the Supreme Court held in Borden. So when they admonish this court to not forget we're talking about crimes of violence, that admonition applies with equal force here. So because of the importance of the issue, are you in effect waiving your waiver argument so we can address this, because it's an important issue? That's assuming any of those would apply. Your Honor, I'm not waiving it. This court has discretion, of course. I think when somebody doesn't raise something in their opening brief, it's considered a forfeiture. This court has discretion to excuse it. This court has always held our feet to the fire when we've raised something, particularly when we've raised it in a way that deprives. If you were getting a preferred disposition in this case, would you want it by waiver or by disposition on the merits? I would prefer it by disposition on the merits if it's favorable. I can say that certainly unequivocally. I sure hope so. I am not going to change my position or tell this court that the law applies differently if it's favorable to me or not. I will leave whether to consider the defense argument raised for the first time in the reply brief to this court's discretion. Honestly, I don't think it matters because fundamentally, I think we agreed from the beginning. I can understand why you would want this decided with the merits. It has purely to do with clarification and simplification of the law. Absolutely, Your Honor. That's what you're after, and it could be any panel in the country, and you would make that statement. Absolutely, Your Honor. Even if it's against us, there's some value in clarification, and that's the law, and we'll move forward with it as it is. I think the correct answer is not very difficult here. Assault with a dangerous weapon. How is this court construed? It means intent. The dangerous weapon requirement elevates it to crime of violence. The Sixth Circuit did hold that. If this court holds the opposite, there would be a clear split with the Sixth Circuit. I do want to address the point about the idea that there's a split with another circuit. There would not be a split with any other circuit. The Eleventh Circuit did address the state law offense, but it said we're going to do that in the particular circumstances of this case because that's what was charged in this case, and it has a footnote specifically saying we're not going to say, and we don't have an occasion to say, what the elements of our offense are as a whole. I can't say I agree with that approach because the categorical approach requires you to look at the elements. My opinion recites that the government did, narrowing it down here, basically make the same argument that you all are making now. At least there's a sentence in there to that effect. Yes, Your Honor, it did, and I think what the court said was because of the jury instructions particular to that case, we're not going to look beyond the state law. It also affirmed. So it found the state law sufficient, so it really didn't need to address whether the other elements of the offense, the assault with a dangerous weapon element, would apply. My point is I don't necessarily agree with that, and I don't think it's really applicable here because we don't have jury instructions. Mr. Carpenter already spent more time on it than the 11th Circuit did. That may be, and my only point is that if this court affirms in this case, it would not be creating a circuit split with the 11th Circuit, nor would it be creating a circuit split with the 10th Circuit. Tokai did come out the other way, but that was based on a concession from the United States. It had originally raised state law only, because that was sufficient under 10th Circuit precedent. 10th Circuit precedent then changed, and they were in a bit of a bind, so they conceded it. Not a true circuit split by any stretch of the imagination. If this court did reverse, it would be creating a circuit split with the 6th Circuit, which held in manners that the assault with a dangerous weapon element is alone sufficient to categorically qualify by car assault with a dangerous weapon,  specifically citing Borden just a couple of months ago. I would say that stare decisis principles really are relevant here. I agree, Your Honor. And the Bryant case, which we referred to in the earlier argument, is important for stare decisis purposes, and McDaniel is important for stare decisis purposes, and Keene is important for stare decisis purposes, and that great bulk of law out there that say dangerous weapons assaults, that's the core concept, is without getting too fine and splitting hairs and everything, there is a huge body of law out there which says that dangerous weapons, that assaults with dangerous weapon enhancements are crimes of violence. And that's what you have here. And that's something that everybody can follow. Absolutely, Your Honor. If somebody has been convicted or pled guilty to an assault with a dangerous weapon, then that's a crime of violence because it's case after case after case that is held out. I agree, Your Honor, and that comports with this court's precedent, it comports with the language of the statute, it comports with Congress's choice to target only violent crimes, and it comports with common sense, which I know is not always that relevant in the categorical approach, but here I think they fit together. Assault with a dangerous weapon for the purpose of promoting or advancing your position in an enterprise as a crime of violence ought to be a crime of violence, and here it is by its plain terms and according to the precedent. And I think that's critical. There's very little I don't think has been discussed already today, so I won't belabor anything further, but I will be happy to answer any questions the court may have if there are any questions. If not, I'll yield the balance of my time back to the court. We have no further questions, sir. Thank you, Your Honor. Mr. Carpenter. Your Honor, I think there's just one, maybe one point that hasn't been made yet that I would highlight, and that is Judge Wilkinson, you mentioned a huge body of law or consensus perhaps that dangerous weapon elements necessarily qualify as a crime of violence. I think that's somewhat overstating the situation, and I would point to this court's decision just last week in United States v. Red, which was an assault with a firearm statute where it was held not to be a crime of violence under ACCA because the state law did clearly provide that recklessness was the mens rea. I think it is common in the states for assault with a firearm to be prosecuted based on recklessness. The only other thing I would add in response to my colleague's question is there are federal assault prosecutions for reckless driving. Loera in the Ninth Circuit is one of the examples of that that we cited. Obviously, that wasn't a by-car predicate, but it very much could be because it was an A6 prosecution, so it could easily be incorporated into a by-car offense. After that, the court's given me lots of time today, and I appreciate that. If you have further questions, I'll be happy to try to address them. But otherwise, of course, we ask the court to reverse and thank the court for its time. All right. Thank you both. I really appreciate your arguments, and it's a pleasure to have you here and to hear from each of you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Julius N. Richardson